# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

    *Plaintiff,*

vs.

    Case No. 18-3120-EFM-GEB

RAYMOND ROBERTS et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Pro se Plaintiff Jeffrey Sperry sued Defendants Raymond Roberts, Johnnie Goddard, Rex Pryor, James Heimgartner, and Lindsey Wildermuth for failing to pay him the interest earned on his inmate trust account. Sperry alleges that Defendants' actions violated a number of federal and state laws. As a remedy, Sperry seeks monetary damages, a declaratory judgment, and injunctive relief. Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 24). For the following reasons, Defendants' Motion is granted in part and denied in part.

    **I.**    **Factual and Procedural Background[1]**

Sperry has been an inmate in the custody of the Kansas Department of Corrections ("KDOC") since April 1997, and he is currently held at the El Dorado Correctional Facility. In November 2016, Sperry filed a lawsuit against 24 KDOC defendants, alleging a variety of claims

---

[1] The facts are taken from Sperry's Complaint and are accepted as true for the purposes of this ruling.

relating to his treatment in prison. That case was docketed as 16-cv-03222. A year later, Sperry filed an amended complaint which included 14 counts against the same 24 defendants. In both his original and amended complaint, Sperry alleged that Roberts, Goddard, Pryor, Heimgartner, and Wildermuth unlawfully failed to pay Sperry interest earned on his inmate trust account.

This Court severed four of Sperry's counts into new, separate lawsuits.[2] This case is one of those severed lawsuits, and it addresses only Count IX of Sperry's Amended Complaint from his original lawsuit. In Count IX, Sperry alleges that from 1997 to February 2012, his inmate account accumulated interest continuously. However, Sperry alleges that in February 2012 Defendants began taking the interest that should have gone into his trust fund account. Sperry alleges that Defendants' actions violated a number of his federal constitutional and statutory rights, including the Fifth and Fourteenth Amendment, the RICO Act, and 42 U.S.C. § 1985 (conspiracy to violate civil rights). Sperry also alleges Defendants committed the torts of conversion, outrageous conduct, breach of fiduciary duty, and negligence under Kansas law. As a remedy, Sperry requests the Court order Defendants to "immediately start paying plaintiff his proper interest on his inmate trust accounts."[3] Sperry also requests monetary damages in "the total amount of interest embezzled from every inmates' [sic] trust account . . . ."[4]

This Court ordered that a *Martinez* report be prepared to address Sperry's allegations, and the report was filed in March 2019. According to the *Martinez* report, during the relevant period—2012 through 2017—the amount of fees charged on the inmate trust funds exceeded the interest

---

[2] Doc. 11.

[3] Doc. 1, at 22.

[4] Doc. 1, at 23.

earned from those accounts. So, Sperry did not receive any interest during that time. But in June 2017, the interest earned from Sperry's account once again exceeded the account's fees, and interest started to accrue in Sperry's trust fund accordingly. Sperry does not dispute that he has received interest on his inmate trust fund since June 2017. Furthermore, Sperry does not dispute the *Martinez* report's explanation that he received no interest because that money was used to pay his account's bank fees. Sperry does argue that it was unlawful for KDOC to use interest earned from inmate trust accounts to pay for bank fees.

On July 24, 2019, Defendants filed a Rule 12(b) motion to dismiss or, in the alternative, a Rule 56 motion for summary judgment on Sperry's claims. Defendants argue that Sperry's claims should be dismissed for a variety of different reasons. The Court granted Sperry two extensions to file a Response, giving him a deadline of October 21, 2019. Sperry did not file his Response until January 10, 2020. Sperry did not explain the reason for the delay. Defendants filed a timely Reply, and this motion is ripe of the Court's consideration.

## II.   Legal Standard[5]

Under Rule 12(b)(1), the Court may dismiss a complaint based on a lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction and, as such, must have a statutory or

---

[5] The Court rules on Defendants' Motion under Rule 12(b). Although the Court could convert the Motion to one for summary judgment under Rule 56, such a step is not necessary, even though the Court takes some facts from the *Martinez* report into consideration. *See Stewart v. Norwood*, 2017 WL 4284971, at *2 n.25 (D. Kan. 2017) (stating that a *Martinez* report may be considered in a Rule 12(b) motion—rather than converting it to a motion for summary judgment—when the Court "considers only those factual recitations set forth in the *Martinez* report that are corroborated or undisputed by [the p]laintiff").

constitutional basis to exercise jurisdiction."[6]  "The law imposes a presumption against jurisdiction, and plaintiff bears the burden of showing that jurisdiction is proper."[7]

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[8]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[9]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[10]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[11]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[12]

---

[6] *Solis v. La Familia Corp.*, 2011 WL 2531140, at *2 (D. Kan. 2011) (citing *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007)).

[7] *Id.*

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Iqbal*, 556 U.S. at 678–79.

[11] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[12] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[13] A pro se litigant is entitled to a liberal construction of his pleadings.[14] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[15] But it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[16] As it relates to motions to dismiss generally, "the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff."[17] "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

### III.   Analysis

**A.   Local Rules 6.1 and 7.4.**

Defendants ask the Court to strike Sperry's Response for failing to comply with D. Kan. Rules 6.1(d) and 7.4(b) and consider their Motion as uncontested. Rule 6.1(d) gives parties 21 days to file a response to a dispositive motion.[19] Rule 7.4 states:

---

[13] *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

[14] *See Trackwell v. U.S. Gov't,* 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[15] *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Id.*

[17] *Ramirez v. Dep't of Corr., Colo.,* 222 F.3d 1238, 1240 (10th Cir. 2000).

[18] *Iqbal,* 556 U.S. at 678.

[19] D. Kan. Rule 6.1(d)(2).

> Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.[20]

Here, Defendants filed their Motion on July 24, 2019. Sperry requested and was granted two extensions to file his Response. Sperry was required to file his Response by October 21, 2019, but he did not file his Response until January 10, 2020. Sperry gives no explanation for the tardiness of his Response. Based on Sperry's failure to file a timely Response, Rule 7.4(b) authorizes the Court to grant Defendants' Motion "without further discussion."[21] However, such a ruling may not be consistent with Tenth Circuit law.[22] Additionally, the Court "has considerable latitude in interpreting and applying its local rules."[23] "When possible and reasonable, the [C]ourt prefers to resolve motions on their merits after all sides have stated their positions. While the [C]ourt is certainly not required to give parties additional opportunities to file briefs, it is within this [C]ourt's discretion to do so."[24] Accordingly, the Court will exercise its discretion and analyze Defendants' Motion on its merits despite Sperry's failure to abide by the local rules.

---

[20] D. Kan. Rule 7.4(b).

[21] *Bigler v. U.S. Bank Tr.*, 2017 WL 2362087, at *1 (D. Kan. 2017)

[22] *See Ellison v. English*, 2019 WL 3716448, at *1 (D. Kan. 2019) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003) ("[T]he Tenth Circuit has directed that a district court may not grant a motion to dismiss or a motion for summary judgment based solely on the plaintiff's failure to respond.")).

[23] *Johnston v. Prairie View*, 2019 WL 4751998, at *2 (D. Kan. 2019).

[24] *Id.*

## B.     Eleventh Amendment Immunity

Sperry seeks monetary damages and a declaratory judgment against all five Defendants in their official capacities. Defendants, in turn, assert that they are entitled to Eleventh Amendment immunity. Generally, "[t]he Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens."[25] Sovereign immunity under the Eleventh Amendment, if effectively asserted, strips the Court of subject matter jurisdiction.[26] This immunity also "extends to arms of the state and to state officials who are sued for damages in their official capacity."[27] Eleventh Amendment immunity is not absolute: states may waive this immunity and consent to suit in federal court, and Congress may abrogate it.[28]

Here, Defendants are state officials entitled to Eleventh Amendment immunity in their official capacities. Sperry has not demonstrated that Congress abrogated Eleventh Amendment immunity or that Kansas consented to being sued for these claims. As a result, Sperry's claims for monetary damages against Defendants in their official capacities are dismissed.

## C.     Qualified Immunity

Sperry also seeks monetary damages against Defendants in their individual capacities. Defendants argue that they are entitled to qualified immunity, which "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law."[29] "The qualified-immunity doctrine protects public employees from both liability and 'from the burdens

---

[25] *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).

[26] *Id.*

[27] *Id.*

[28] *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019).

[29] *Davis v. Clifford*, 825 F.3d 1131, 1134 (10th Cir. 2016) (citation and quotations omitted).

of litigation' arising from their exercise of discretion."[30] Once state officials claim qualified immunity, the burden is on the plaintiff to show that (1) the defendant's actions violated a federal constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's alleged conduct.[31] Although the plaintiff must prove both elements for the suit to proceed, courts have discretion to choose which part of the test to address first.[32]

The Court elects to analyze the second prong of the qualified immunity test first. Ordinarily, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[33] Sperry cites no caselaw showing that Defendants violated a clearly established right. Instead, Sperry argues that he need only cite K.S.A. § 76-175(b), which he claims gives him a property interest in the interest earned on his inmate account.[34] A similar issue was raised in this district in *Stewart v. Norwood*.[35]

In *Stewart*, the plaintiff was an inmate who claimed, among other things, that Kansas prison officials failed to pay him interest earned on his inmate account. Prior to his incarceration, the plaintiff served in the military. During his time in prison, the plaintiff received benefits from the

---

[30] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.) (quoting *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013)).

[31] *Id.*

[32] *Id.*

[33] *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018)

[34] K.S.A. § 76-175(b) states: "Interest earned on moneys invested under this section shall be regularly prorated according to procedures approved by the director of accounts and reports and credited to the individual patient, inmate or other account on the basis of the amount of money each patient, inmate or other person has in the trust fund."

[35] *Stewart v. Norwood*, 2017 WL 4284971 (D. Kan. 2017).

Veterans Administration for his service, which were deposited into his inmate account. Because of the payments from the VA, the plaintiff's inmate account contained more money than the average inmate's account. Despite the plaintiff's account containing more money (and thereby earning more interest) compared to other inmates' accounts, the plaintiff asserted that the prison used his earned interest to pay bank fees for the larger prison population.[36] The plaintiff argued that this violated the Takings Clause of the Fifth Amendment.

In *Stewart*, the defendants raised a qualified immunity defense. The court analyzed both prongs of the qualified immunity test. Based largely on K.S.A. § 76-175(b), the court concluded that the plaintiff had "a protectable property interest in the interest generated from his inmate trust account,"[37] and therefore the prison taking interest earned on the plaintiff's account to pay banks fees on other inmate's accounts implicated the Fifth Amendment's Takings Clause. Accordingly, the court held that the plaintiff satisfied the first prong of the qualified immunity test.[38]

However, given the lack of Tenth Circuit caselaw on point (as well as a split among the circuits that considered similar issues), the court held that the plaintiff's "property interest in interest generated by his inmate trust account *was not clearly established at the time of the challenged conduct*."[39] Thus, the court concluded that the defendants were entitled to qualified immunity.[40]

---

[36] *Id.* at *10–12.

[37] *Id.* at *11.

[38] *Id.* at *12.

[39] *Id.* at *13 (emphasis added).

[40] *Id.*

Here, the Court reaches a similar conclusion. Notably, in *Stewart*, the court held that it was not a violation of clearly established law for the defendants to use one inmate's earned interest to pay bank fees for *other* inmates' accounts. Here, the Court addresses a much narrower question: was it clearly established at the time of Defendants' alleged misconduct (February 2012 to June 2017) that it was unlawful to use interest earned from Sperry's inmate account to pay bank fees associated with his own account. *Stewart* is the first case in this district to address this matter, and it was decided in September 2017—months after the Defendants' alleged misconduct in this case. So, the opinion has no bearing on whether it was clearly established that Defendants actions violated Sperry's constitutional rights.

Furthermore, for a right to be clearly established, Sperry must either "identify[] an on-point Supreme Court or published Tenth Circuit decision" or, alternatively, show that "the clearly established weight of authority from other courts [] have found the law to be as the [he] maintains."[41] Even if *Stewart* had been decided earlier, a single non-binding district court opinion does not clearly establish a right under the qualified immunity doctrine. Sperry fails to demonstrate that Defendants violated a clearly established law, and Defendants are therefore entitled to qualified immunity in their individual-capacities on Sperry's federal claims.[42] Qualified immunity, however, does not extend to Sperry's claims arising under state law.[43]

---

[41] *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015).

[42] This ruling renders it unnecessary for the Court to consider Defendants' other arguments in support of dismissing Sperry's federal claims, including failure to state a claim, failure to exhaust administrative remedies on every claim but the Takings Clause violation, statute of limitations barring claims from February 2012 to November 2015, and failure to allege Defendants personally participated in violating Sperry's constitutional and statutory rights.

[43] *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1294 (D. Kan. 2009) (citing *Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008)) ("[U]nder the governing Tenth Circuit law, qualified immunity does not apply to claims asserted under state law.").

**D.      Mootness**

Sperry also seeks injunctive relief, requesting that the Court order Defendants to "immediately start paying plaintiff his proper interest on his inmate trust accounts."[44] Defendants argue that the *Martinez* report filed in this case shows that Sperry has received interest on his account uninterrupted since June 2017.[45] Thus, the claim for injunctive relief is moot. Sperry does not dispute this fact. He instead argues that his claim for injunctive relief should not be dismissed as moot because Defendants will likely repeat their unlawful behavior in the future.

It is not entirely clear from Sperry's Response what exception to the mootness doctrine he is relying on. One well-known exception to the mootness doctrine is for violations that are capable of repetition, yet evading review.[46] Another is the voluntary cessation exception.[47] Defendants address only the former. The Court, however, deems it unnecessary to rule on whether the capable of repetition, yet evading review exception applies here. Rather, the Court concludes that the voluntary cessation exception supplies sufficient reason to deny Defendants' request to dismiss Sperry's injunctive relief claim as moot.

"Under the 'voluntary cessation exception' to mootness, 'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.' "[48] This exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit

---

[44] Doc. 1, at 22.

[45] Doc. 16, Ex. D, at 76.

[46] *See Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 997 (10th Cir. 2005).

[47] *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016).

[48] *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (citations omitted)

moot and then resum[e] the illegal conduct."[49]  Importantly, to avoid application of the voluntary cessation exception, the defendant "carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[50]  "This burden is 'stringent' and 'heavy.' "[51]

Here, Defendants' entire argument is that Sperry has not carried his burden to prove that the capable of repetition, yet evading review exception applies in this case.  But Defendants fail to recognize that they carry the burden under the voluntary cessation exception, and they offer nothing to meet this obligation.  The Court recognizes that the Complaint in this case was filed in November 2017, which is after the alleged deprivation stopped.  However, Sperry originally brought this claim (with many other claims) a year earlier while the alleged violation was still ongoing.[52]  The Court ordered this claim severed into a new lawsuit in November 2017, but that does not change the fact that when Sperry filed his suit for injunctive relief the alleged violations had not ceased.  Because Sperry brought his claim while the violation was allegedly ongoing, the voluntary cessation doctrine is appropriate for the Court's consideration.  Defendants have not met their burden to show that the "wrongful behavior could not reasonably be expected to recur,"[53] and the Court therefore holds that Sperry's request for injunctive relief should not be dismissed as moot.

---

[49] *Id.* at 880-81.

[50] *Id.* (internal citations and quotations omitted).

[51] *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

[52] *See Sperry v. Wildermuth et al*, 5:16-cv-03222-SAC (D. Kan.), Doc. 1.

[53] *Prison Legal News*, 944 F.3d at 880–81.

**E.      State law claims**

The only remaining claims to address are Sperry's claims under Kansas law against Defendants in their individual capacities. Sperry brings tort claims for conversion, outrageous conduct, breach of fiduciary duty, and negligence. Defendants argue that because the Court should dismiss all of Sperry's federal claims, the Court also should decline to exercise supplemental jurisdiction over Sperry's state law claims. Sperry, in contrast, argues that Defendants' argument is misplaced because the Court has original jurisdiction over his state law claims under the federal diversity jurisdiction statute.

Under 28 U.S.C. § 1332, the Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."[54]

Sperry focuses on § 1332's citizenship requirement, arguing that he is a Missouri citizen and each Defendant is a Kansas citizen. The Court notes that even though Sperry is incarcerated in Kansas, he may still be a Missouri citizen.[55] However, § 1332 also contains an amount-in-controversy requirement of $75,000, and Sperry does not address this aspect of § 1332. Sperry seeks monetary damages in "the total amount of interest embezzled from every inmates' trust account . . . ." Notwithstanding the fact that Sperry is trying to recover damages suffered by other inmates (which he is not entitled to do), Sperry's Complaint makes no mention of how much interest was taken from his account. The burden is on Sperry to demonstrate that the Court has

---

[54] 28 U.S.C. § 1332(a)(1).

[55] *Smith v. Cummings*, 445 F.3d 1254, 1259–60 (10th Cir. 2006) ("For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile . . . [and b]ecause domicile is a voluntary status, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state.").

jurisdiction over his state law claims, and he fails to meet that burden with respect to § 1332's amount-in-controversy requirement. Accordingly, the Court holds that it does not have jurisdiction over Sperry's state law claims pursuant to the diversity jurisdiction statute. Because that is the sole basis on which Sperry argues the Court has jurisdiction over his tort claims, the Court dismisses them.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 24) is **GRANTED IN PART AND DENIED IN PART.** Specifically, the Court lacks jurisdiction over Sperry's official-capacity and state law claims; Defendants are entitled to qualified immunity in their individual capacities on Sperry's federal claims; Sperry may proceed on his claim for injunctive relief.

**IT IS SO ORDERED.**

Dated this 26th day of August, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE